UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SPOKANE SCHOOL DISTRICT NO. 81, a Washington non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>NORTHWEST BUILDING SYSTEMS, INC., et al.,<br><br>    Defendants. | NO. CV-04-0078-MWL<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

I.  Procedural History

Plaintiff Spokane School District No. 81 ("Plaintiff") commenced this action against Northwest Building Systems, Inc., ("NBS") and Nordyne, Inc., (collectively "Defendants") on March 1, 2004. (Ct. Rec. 1). The parties have consented to the jurisdiction of the Magistrate Judge in this case. (Ct. Rec. 10).

On December 9, 2005, Plaintiff filed a timely motion for partial summary judgment. (Ct. Rec. 32). The hearing on Plaintiff's motion for summary judgment was set for January 18, 2006 at 10:00 a.m. (Ct. Rec. 35). On December 20, 2005, Defendants filed an objection to Plaintiff's statement of undisputed facts. (Ct. Rec. 36). Defendants filed a response in opposition to Plaintiff's motion for partial summary judgment on December 29, 2005. (Ct. Rec. 37). On January 6, 2006, Plaintiff

1

1  filed a reply in support of their motion for partial summary
2  judgment.  (Ct. Rec. 43).

## II. Factual Summary

In June, 1992, Plaintiff entered into a construction contract to construct 12 relocatable or portable units for installation at 12 different schools throughout the Spokane school district. (Ct. Rec. 34-2, pp. 2-3). One of these portable units was to be delivered to and installed by NBS at the Indian Trail Elementary School, 4102 West Woodside, Spokane, Washington. (Ct. Rec. 34-2, pp. 10-11 (declaration of Tim Wood)). NBS installed a heat pump, manufactured by Defendant Nordyne, for the portable at the Indian Trail Elementary School. (Ct. Rec. 34-2, p. 16 (declaration of Ron Kilgore)).

At some point in time before October 20, 2001, the component that turned the heating elements for the Nordyne heat pump on and off failed in the "on" position and heat from the heating elements consequently raised the temperature of the exterior siding for the portable above its ignition temperature causing a fire. (Ct. Rec. 34-2, p. 16 (declaration of Ron Kilgore)). The fire did extensive damage to the portable itself as well as various items of personal property inside the portable at the time. (Ct. Rec. 34-2, p. 16 (declaration of Ron Kilgore)).

## III. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id*. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the

4

1 air, and it is the opposing party's obligation to produce a
2 factual predicate from which the inference may be drawn. *Richards*
3 *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal.
4 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

5     Finally, to demonstrate a genuine issue, the opposing party
6 "must do more than simply show that there is some metaphysical
7 doubt as to the material facts.  Where the record taken as a whole
8 could not lead a rational trier of fact to find for the nonmoving
9 party, there is no 'genuine issue for trial.'"  *Matsushita*, 475
10 U.S. at 587 (citation omitted).

11 IV. <u>Discussion</u>

12     Plaintiff moves this Court to enter judgment, as a matter of
13 law, against NBS with respect to its second cause of action for
14 defective construction.  (Ct. Rec. 32).  Plaintiff's complaint
15 alleges, in the second cause of action against NBS, that the
16 portable built by NBS was defectively constructed in violation of
17 RCW 7.72.030(2)(a).  (Ct. Rec. 1, pp. 5-6).  Because of the
18 defective construction, Plaintiff contends that the portable was
19 unsafe to an extent beyond that which would be contemplated by an
20 ordinary user.  (Ct. Rec. 1, p. 6).

21     A. <u>Applicable Code</u>

22     Plaintiff argues that, in this case, both the uniform
23 mechanical code and the national electrical code required that the
24 heat pump for the portable at issue be installed by NBS with a
25 clearance of one inch between the heating element portion of the
26 heat pump and any combustible material.  (Ct. Rec. 33, p. 6).
27 Since NBS did not comply with the requirements of the uniform
28 ///

mechanical code and the national electrical code, Plaintiff argues that they are strictly liable for the fire pursuant to RCW 7.72.030(2)(a).

To recover under a theory of strict liability, pursuant to RCW 7.72.030(2)(a), for a failure to manufacture a product that is reasonably safe in construction, a plaintiff must show that when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units in the same product line.  RCW 7.72.030(2)(a).

As noted by Plaintiff, under RCW 5.40.050, "any breach of duty as provided by statute, ordinance, or administrative rule relating to electrical fire safety . . . shall be considered negligence per se."  Therefore, the material deviation from a design specification or performance standard can be established by the violation of a statute applicable to electrical fire safety.

Plaintiff asserts that the portable qualified as a "factory built commercial structure" for purposes of RCW 43.22.450. (Ct. Rec. 33, p. 5).  Under RCW 43.22.450(7), a "commercial structure" is defined as "a structure designed or used for human habitation, or human occupancy for industrial, educational, assembly, professional or commercial purposes."  Commercial structures are subject to regulation under RCW 43.22.480(1):

> The Department [of Labor & Industries] shall adopt and enforce rules that protect the health, safety and property of the people of this state by assuring that all factory built housing or factory built commercial structures are structurally sound and that the plumbing, heating, electrical and other components thereof are reasonably safe.  The rules shall be reasonably consistent with recognized and accepted principles of safety and structural soundness, and in

6

>     adopting the rules **the department shall consider, *so far as practicable*, the standards and specifications contained in the uniform building, plumbing and mechanical codes**, including the barrier free code and the Washington energy code as adopted by the state building code council pursuant to Chapter 19.27A RCW, **and the national electrical code**, including the state rules as adopted pursuant to chapter 19.28 RCW and published by the national fire protection association or, when applicable, the temporary worker building code adopted under RCW 70.114A.081.

RCW 43.22.480(1) (emphasis added).

RCW 19.27.031 currently provides that the state building code, which consists of the international building code, the international residential code, the international mechanical code, the international fire code, and the uniform plumbing code, shall be in effect in all counties and cities in the state of Washington. RCW 19.27.031 (2003). Applicable at the time the portable at issue was built by NBS, was the uniform mechanical code which the state of Washington adopted as part of the state building code in 1991. RCW 19.27.031; WAC 51-50-001.

However, NBS asserts that they were required to comply with the "Washington Gold Label standard," not the uniform mechanical code or the national electrical code. (Ct. Rec. 37, p. 23). NBS further argues that the Washington Gold Label standard does not contain a requirement for a one inch clearance at any given location within the unit. (Ct. Rec. 37, p. 5).

NBS states that the Washington Gold Label standard is an adopted building code that governs the manufacturing process carried out by NBS and all other manufacturers of modular classrooms for use in the state of Washington. (Ct. Rec. 37, p. 4; Ct. Rec. 38, p. 2 (Affidavit of Ron Cooper)). The process for obtaining the Gold Label commences with the submitting of plans and specifications to the Washington State Department of Labor and

Industries for approval. (Ct. Rec. 37, p. 4; Ct. Rec. 38, p. 3 (Affidavit of Ron Cooper)). Once approved, and only after approval, the manufacturing of the building, pursuant to those plans and specifications, can begin. (Ct. Rec. 37, p. 4; Ct. Rec. 38, p. 3 (Affidavit of Ron Cooper)). Washington state inspectors examine each phase of the construction and certify whether the unit complies with the Gold Label code. (Ct. Rec. 37, pp. 4-5; Ct. Rec. 38, p. 3 (Affidavit of Ron Cooper)). After the building is completed, a final inspection takes place and, if the code has been complied with, an inspector affixes the Washington Gold Label to the unit. (Ct. Rec. 37, p. 5; Ct. Rec. 38, p. 3 (Affidavit of Ron Cooper)).

RCW 43.22.480(1) indicates that the Department of Labor and Industries shall adopt rules concerning factory built commercial structures and in doing so shall consider, so far as practicable, the standards in the uniform building, plumbing, mechanical and electrical codes. For purposes of this hearing to determine whether there are material issues of fact, a clear inference from the evidence submitted in opposition to Plaintiff's motion for partial summary judgment indicates that the Washington Gold Label standard may be the rules adopted by the Washington State Department of Labor and Industries for use for factory built commercial structures.

NBS asserts that the specifications presented by Gelco[1] to NBS only identified the Washington Gold Label as the compliance standard governing the construction of these units. (Ct. Rec. 38,

---

[1] NBS contracted with Gelco who drafted and provided the plans and specification to NBS for the building of the portable. (Ct. Rec. 37, p. 16).

1  p. 3 (Affidavit of Ron Cooper); Ct. Rec. 38, Exh. 1, p. 2).  In
2  addition, although NBS did not receive written instructions from
3  Nordyne, a representative from Nordyne personally instructed NBS
4  to install the units exactly like it would a Bard heat pump.  (Ct.
5  Rec. 37, p. 6).  The Bard installation instructions call for a
6  one-quarter-inch clearance which is the industry standard and
7  which is consistent with all state inspecting agencies as well as
8  the Nordyne instructions not previously received by NBS.  (Ct.
9  Rec. 37, pp. 6-7).  NBS alleges that they exceeded the suggested
10 clearance by providing an even larger clearance of three-eights
11 inch.  (Ct. Rec. 37, p. 22).  Nevertheless, upon completion of the
12 State's final inspection, the unit shipped to Plaintiff and put
13 into use at the Indian Trail Elementary School passed inspection
14 as being code compliant and had the Gold Label affixed to the
15 building.  (Ct. Rec. 37, p. 7).

16      Although Plaintiff's reply memorandum maintains that Mr.
17 Cooper's affidavit on these issues is inadmissible because he has
18 no personal knowledge concerning these subjects and has not been
19 identified as an expert (Ct. Rec. 43, pp. 3-11), the Court does
20 not agree.  As a party opposing summary judgment, NBS need not
21 "persuade the court that [its] case is convincing, [it] need only
22 come forward with appropriate evidence demonstrating that there is
23 a pending dispute of material fact."  *Waldridge v. American*
24 *Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).  A party may
25 present testimony of its own witnesses by declarations to oppose
26 summary judgment.  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553;
27 ///
28 *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991),

1  *cert. denied*, 506 U.S. 972, 113 S.Ct. 460 (1992).

2       Mr. Cooper, an owner and officer of NBS, signed an affidavit
3  affirming that the above mentioned facts were true and correct.
4  (Ct. Rec. 38).  Supporting and opposing affidavits in a summary
5  judgment proceeding shall be made on personal knowledge, shall set
6  forth such facts as would be admissible in evidence, and shall
7  show affirmatively that the affiant is competent to testify to the
8  matters stated therein.  Fed. R. Civ. P. 56.  However, under some
9  circumstances, the personal knowledge and competency requirements
10 may be inferred from the affidavit itself.  *See*, *Self-Realization*
11 *Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d
12 1322, 1330 (9th Cir. 2000) (inferring personal knowledge of
13 corporate officer regarding identity of employees and their
14 tasks); *see*, *also*, *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir.
15 2000) (inferring personal knowledge of company's credit manager
16 regarding company's ordinary credit practices); *Sheet Metal*
17 *Workers' Int'l Ass'n Local Union No. 359 v. Madison Ind., Inc.*, 84
18 F.3d 1186, 1193 (9th Cir. 1996) (general manager's personal
19 knowledge of hiring events could be presumed); *Barthelemy v. Air*
20 *Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) (finding
21 CEO's personal knowledge of various corporate activities could be
22 presumed).  As an owner and officer of NBS, Mr. Cooper's testimony
23 is within his personal knowledge, and Plaintiff's reply memorandum
24 does not persuade this Court to believe otherwise.

25      The Court's function at summary judgment is only to determine
26 if the affidavit may be used to raise factual issues.  Here, the
27 Court finds that its use is suitable for summary judgment
28 purposes.  Based on the foregoing, the Court finds that there is a

1 dispute of a material fact; namely, the governing building code
2 requirements for the construction of the portable at issue.
3     B.   <u>Clearance</u>
4     Although Plaintiff asserts that it is undisputed that the
5 heat pump installed for the portable possessed no clearance
6 whatsoever between the heat pump and the combustible material (Ct.
7 Rec. 34-2, p. 16 (declaration of Ron Kilgore)), NBS does, in fact,
8 dispute this fact (Ct. Rec. 34-2, p. 5; Ct. Rec. 37, pp. 20-21;
9 Ct. Rec. 38, p. 5).
10     Defendant NBS presents the affidavit of Ron Cooper which
11 demonstrates that, as installed, a clearance of three-eighths inch
12 was provided at the point where the flange passed through the
13 portable's siding, and that one inch clearances were provided from
14 all ducts within the subject three-foot area.  (Ct. Rec. 37, pp.
15 20-21; Ct. Rec. 38, p. 5 (Affidavit of Ron Cooper)).  Defendant
16 NBS also presents the affidavit of Randolph Harris, a nationally
17 recognized engineer specializing in fire cause and origin, which
18 indicates that, although one could not reasonably determine the
19 precise clearance that was present due to burn damage, the fact
20 that NBS used a three-eighths inch template indicates it is
21 probable that the clearance was three-eighths of an inch.  (Ct.
22 Rec. 37, pp. 20-21; Ct. Rec. 39, p. 5 (Affidavit of Randolph
23 Harris)).
24     Based on the above, the Court finds that there is an issue as
25 to the amount of clearance allotted by NBS, a material fact in
26 Plaintiff's second cause of action.  However, it is significant to
27 ///
28 note that, even if the heat pump was installed with the

1 Plaintiff's asserted requisite one inch clearance from combustible
2 materials, Mr. Harris' affidavit raises an issue of fact whether
3 the one inch clearance would have prevented the fire in this case.
4 *See*, *infra*.

   C. <u>Cause of Fire</u>

6   Plaintiff states that it is undisputed that the failure to
7 install the heat pump with a one inch clearance from combustible
8 materials was a proximate cause of the fire at the Indian Trail
9 Elementary School on October 20, 2001. (Ct. Rec. 33, p. 6).
10 Again, NBS demonstrates that this material fact is in dispute.

11   Randolph Harris attested that it would not matter if the
12 combustibles were in direct contact, one inch away or even up to
13 six inches away from the hot air duct. (Ct. Rec. 37, pp. 25-26;
14 Ct. Rec. 39, p. 5 (Affidavit of Randolph Harris)). He opined
15 that, in each of those instances, the wood would reach the point
16 of ignition very quickly once the sequencer and high limit switch
17 failed. (*Id*.) Accordingly, Randolph Harris indicated that a
18 clearance of one inch would not have prevented the fire. (*Id*.)

19   Plaintiff contests Mr. Harris' testimony, indicating that
20 there is no factual basis to support his statements. (Ct. Rec.
21 43, p. 17). Plaintiff asserts that since Mr. Harris provided no
22 scientific results to support his conclusions, his statements are
23 inadmissible under Fed. R. Evid. 702 and not legally sufficient to
24 defeat Plaintiff's motion for partial summary judgment. (Ct. Rec.
25 43, pp. 16-17). Plaintiff cites to *Daubert v. Dow*
26 *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *General Elec. Co. v.*
27 *Joiner*, 522 U.S. 136 (1997), and *Mukhtar v. California State*
28 *University*, 299 F.3d 1053 (9th Cir. 2002) to support his argument

12

that Mr. Harris' affidavit should be excluded. (Ct. Rec. 43, pp. 16-17).[2]

The issue in *Daubert* was whether serious birth defects were caused by the mothers' prenatal ingestion of Bendectin, a prescription drug marketed by Merrell Dow Pharmaceuticals, Inc.; therefore, the *Daubert* case discusses Fed. R. Evid. 702 in terms of "scientific" evidence. *Daubert*, 509 U.S. at 579. As has been noted by some courts, *Daubert*'s focus appears to be on "novel scientific evidence" and the "junk science" problem. *See, e.g.*, *Iacobelli Const. Inc. v. County of Monroe*, 32 F.3d 19 (2nd Cir. 1994) (holding that affidavits submitted by a geotechnical consultant and an underground-construction consultant--summarizing and analyzing site conditions, contract documents, and project results--did not present the kind of "junk science" problem that *Daubert* meant to address); *Lappe v. American Honda Motor Co.*, Inc., 857 F.Supp. 222 (N.D. N.Y. 1994) ("*Daubert* only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific and technological knowledge.") Unconventional science was also present in *Joiner* (expert testimony offered by electrician as evidence that his cancer resulted from exposure to polychlorinated biphenyls ("PCBs"), based on studies indicating that infant mice developed cancer after receiving massive doses of PCBs injected directly

---

[2] Plaintiff made no motion to strike the affidavit of Mr. Harris only arguing that the affidavit opinions should be disregarded per *Daubert*. Plaintiff additionally filed no motion to strike the affidavit of Mr. Cooper, instead also only arguing that his affidavit opinions should be disregarded. Plaintiff did, however, file a successful motion to strike Defendants untimely response and supporting documents in answer to Plaintiff's reply regarding the underlying motion for partial summary judgment. (Ct. Rec. 58).

13

1  into their stomachs) and *Mukhtar* (testimony by expert on racial
2  discrimination, eight criteria for "decoding" white behavior, in a
3  university's decision to deny a professor tenure).  However, the
4  science at issue in the case at hand, the cause and origin of
5  fire, is a widely recognized area of science.  *See*, *e.g.*, 84
6  A.L.R.5th 69.

7      Randolph Harris is a nationally recognized engineer
8  specializing in fire cause and origin.  (Ct. Rec. 37, pp. 20-21;
9  Ct. Rec. 39, Exh. 1 (Curriculum Vitae of Randolph Harris)).  In
10  2003, Mr. Harris attended a lab examination of the heat pump at
11  the offices of Kilgore Engineering to perform tests and gather
12  information to determine the cause of the fire at the Indian Trial
13  Elementary School.  (Ct. Rec. 39, p. 2 (Affidavit of Randolph
14  Harris)).  On January 22 and 23, 2005, Mr. Harris personally
15  visited and carried out an on-site inspection of the modular unit
16  at the Indian Trail Elementary and a total of 11 other schools
17  where the heat pumps were examined.  (Ct. Rec. 39, p. 3 (Affidavit
18  of Randolph Harris)).  Mr. Harris based his statements and
19  findings on his examinations, tests conducted, discussions and
20  review of the materials.  (*Id*.)

21      The Ninth Circuit held in *Mukhtar v. California State
22  University*, 299 F.3d 1053, 1064-1066 (9th Cir. 2002), that the
23  district court must make some kind of reliability determination
24  prior to admitting expert witness testimony.  Based on the
25  foregoing, the Court concludes that Mr. Harris' opinions are
26  ///
27  sufficiently supported by his performance of tests and
28  examinations of the heat pump and the 12 modular units at the

schools. The Court therefore finds that Mr. Harris' testimony, by way of his affidavit, is relevant and reliable and should not be excluded for the purposes of this motion. NBS has thus exhibited that there is a dispute as to the actual cause of the fire in this case.

V. <u>Conclusion</u>

Plaintiff asserts that the undisputed violation of the uniform mechanical code, the national electrical code and Nordyne's installation instructions establishes the liability of NBS for a violation of RCW 7.72.030(2)(a) as a matter of law. (Ct. Rec. 33, p. 6). Accordingly, Plaintiff contends that this Court should enter judgment against NBS on the issues of liability and proximate causation with respect to Plaintiff's second cause of action for defective construction. (Ct. Rec. 33, p. 6).

However, the Court finds that NBS has raised genuine factual issues to establish a need for trial on the claim. NBS has demonstrated that there exists disputed issues of fact regarding the governing building code standard, the amount of clearance and the actual cause of the fire. Based on these disputed issues of fact, the Court cannot conclude that summary judgment should be granted on Plaintiff's second cause of action for defective construction. Accordingly, the Court **DENIES** Plaintiff's motion for partial summary judgment. (**Ct. Rec. 32**).

DATED this ___20th___ day of January, 2006.

                                      S/ Michael W. Leavitt
                                        MICHAEL W. LEAVITT
                             UNITED STATES MAGISTRATE JUDGE